**No. 24-1656**

*In the*
United States Court of Appeals
*for the* Fourth Circuit

_____

LAQUITA OLIVER, *et al.*

v.

NAVY FEDERAL CREDIT UNION

_____

**APPELLANTS' REPLY BRIEF**

*Appeal from the United States District Court for the Eastern District of Virginia, Civil Action No. 23-cv-1731*

Hassan A. Zavareei
Glenn E. Chappell
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW
Suite 1010
Washington, D.C. 20006
Tel. 202-973-0900
hzavareei@tzlegal.com
gchappell@tzlegal.com

Adam J. Levitt
Daniel R. Schwartz
**DiCELLO LEVITT LLP**
Ten North Dearborn Street
Sixth Floor
Chicago, Illinois 60602
Tel. 312-214-7900
alevitt@dicellolevitt.com
dschwartz@dicellolevitt.com

Ben Crump
**BEN CRUMP LAW PLLC**
122 South Calhoun Street
Tallahassee, Florida 32301
Tel. 850-224-2020
ben@bencrump.com

*Counsel for Plaintiffs*

*(Additional counsel listed on signature page)*

# TABLE OF CONTENTS

I.  Introduction ................................................................................1

II.  Plaintiffs Allege a Common Policy ...........................................4

    A.  The District Court's Finding That Plaintiffs Stated A Disparate Impact As To Themselves Should Preclude Striking The Class Allegations ..........................................................................4

    B.  Navy Federal's Arguments Regarding Commonality Fail ...................9

        1.  Mere Differences In Loan Types Do Not Defeat Commonality ..........................................................9

        2.  Purportedly "Individualized" Mortgage Process Does Not Defeat Commonality ...............................15

III.  Navy Federal's Arguments Regarding Typicality and Predominance Fail ........................................................................16

IV.  Ample Authority Suggests Plaintiffs' Proposed Class Could Be Certified ...................................................................................18

V.  The District Court's Order Was Otherwise Fundamentally Flawed ............20

    A.  The District Court Engaged In Impermissible Fact-Finding .............20

    B.  The District Court's Decision Is Internally Inconsistent ....................22

    C.  The District Court's Order Was Premature .........................................24

VI.  Conclusion ...............................................................................28

# TABLE OF AUTHORITIES

## Cases

*Adams v. Bethlehem Steel Corp.*,
    736 F.2d 992 (4th Cir. 1984) ................................................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................8

*Bacon v. Honda of America Manufacturing, Inc.*,
    370 F.3d 565 (6th Cir. 2002) ...................................................... 23, 24

*Carson v. Giant Food, Inc.*,
    187 F. Supp. 2d 462 (D. Md. 2002) ....................................................16

*Cnty. of Cook v. HSBC N. Am. Holdings Inc.*,
    314 F. Supp. 3d 950 (N.D. Ill. 2018) ..................................................19

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) ............................................... 19, 20

*Ellison v. Inova Health Care Services*,
    692 F. Supp. 3d 548 (E.D. Va. 2023) ..................................................25

*EQT Prod. Co. v. Adair*,
    764 F.3d 347 (4th Cir. 2014) ..............................................................13

*Fobbs v. Hunt*,
    No. 3:21CV26 (DJN), 2021 WL 1792087 (E.D. Va. May 5, 2021) ....................17

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ..........................................................................14

*Goodman v. Schlesinger*,
    584 F.2d 1325 (4th Cir. 1978) ...................................................... 10, 11

*In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*,
    537 F. Supp. 3d 679 (D.N.J. 2021) .....................................................17

*In re Yasmin & Yaz (Drospirenone) Mktg.*,
    275 F.R.D. 270 (S.D. Ill. 2011) .................................................... 12, 25

*Jones v. Depuy Synthes Prods., Inc.*,
    330 F.R.D. 298 (N.D. Ala. 2018) ......................................................18

*Knapp v. Zoetis, Inc.*,
    2021 WL 1225970 (E.D. Va. Mar. 31, 2021) ....................................25

*Love v. Johanns,*
  439 F.3d 723 (D.C. Cir. 2006) ............................................................. 15

*Marcus v. BMW of N. Am., LLC,*
  687 F.3d 583 (3d Cir. 2012) ................................................................. 17

*Montgomery Cnty., Maryland v. Bank of Am. Corp.,*
  421 F. Supp. 3d 170 (D. Md. 2019) ..................................................... 18

*Murdaugh Volkswagen, Inc. v. First Nat. Bank of S.C.,*
  741 F.2d 41 (4th Cir. 1984) ................................................................. 26

*Nat'l Fair Hous. All. v. Bank of Am., N.A.,*
  2023 WL 2633636 (D. Md. Mar. 24, 2023) ........................................ 19

*Pilgrim v. Universal Health Card, LLC,*
  660 F.3d 943 (6th Cir. 2011) ........................................................ 12, 25

*Prince George's Cnty., Maryland v. Wells Fargo & Co.,*
  397 F. Supp. 3d 752 (D. Md. 2019) ..................................................... 19

*Rodriguez v. Nat'l City Bank,*
  726 F.3d 372 (3d Cir. 2013) ................................................................. 16

*Rose v. SLM Fin. Corp.,*
  254 F.R.D. 269 (W.D.N.C. 2008) ......................................................... 13

*Segars v. Atl. Coast Line R. Co.,*
  286 F.2d 767 (4th Cir. 1961) ................................................................. 27

*Simpson v. Dart,*
  23 F.4th 706 (7th Cir. 2022) ................................................................... 6

*Skipper v. Giant Food Inc.,*
  68 F. App'x. 393 (4th Cir. 2003) .......................................................... 16

*Tabor v. Hilti, Inc.,*
  703 F.3d 1206 (10th Cir. 2013) .............................................. 6, 8, 19, 23

*Talley v. ARINC, Inc.,*
  222 F.R.D. 260 (D. Md. 2004) ......................................... 6, 7, 8, 12, 23

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.,*
  576 U.S. 519 (2015) ............................................................... 4, 8, 23

*Waters v. Electrolux Home Products, Inc.,*
  2016 WL 3926431 (N.D. W. Va. Jul. 18, 2016) .................................. 25

*Williams v. Big Picture Loans, LLC,*
  339 F.R.D. 46 (E.D. Va. 2021) ............................................................... 9

*Williams v. Martorello*,
   59 F.4th 68 (4th Cir. 2023)...........................................................................9

## I.    Introduction

Plaintiffs allege the means by which Navy Federal determines their "creditworthiness" for home loans is impermissibly flawed: Navy Federal employs a proprietary credit-underwriting algorithm that has been shown to have a statistically significant and negative impact on its evaluation of minority borrowers' home loan applications. The district court, *as to the individual plaintiffs*, agreed, and ruled that each of the nine individual Plaintiffs stated a disparate impact claim based on those data. The court did not undertake a case-by-case analysis of each of the plaintiffs' claims or loans.

But the district court erred when it permanently struck Plaintiffs' class allegations, determining—despite the allegation of a single, flawed, policy respecting Navy Federal's evaluation of applicant creditworthiness—that no set of facts could possibly support any class case. Indeed, the district court's finding—in one fell swoop—that each of the plaintiffs have pleaded a disparate impact as to themselves is at odds with its simultaneous striking of the class allegations at this stage. The disparate impact allegations, on their face, allege that there is rot in Navy Federal's algorithmic, universally applied evaluation of applicants' creditworthiness. If that algorithm, when applied to the individual plaintiffs' loan applications, plausibly caused a disparate impact, it also plausibly did so for the absent class members who experienced the *same* credit evaluation. Not surprisingly, Navy

Federal points to no case in which a motion to dismiss a claim for disparate impact was denied as to an individual, but where the class allegations nevertheless were struck pre-discovery. None appears to exist.

No argument Navy Federal proffers is persuasive. First, Navy Federal argues the district court properly struck the class allegations for want of "commonality" because "[t]he proposed class impermissibly encompasses differently situated categories of applicants." But Navy Federal ignores that (1) Plaintiffs alleged a single underwriting policy used across all loan types; and (2) the solution to the existence of some variability is, potentially and following discovery, to modify the class or to create sub-classes, not to throw out class allegations in their entirety and permanently at the pleading stage.

Second, Navy Federal states commonality is lacking because the "mortgage-loan-application processes are inherently individualized." In other words, it argues that because individuals have differing loan characteristics—and loan applications consider many variables—applications must be sufficiently distinct as to defeat commonality. But that argument both twists the Complaint's allegations and misses the point. It twists the allegations because it rests on the false premise that Plaintiffs' disparate impact claim is an aggregate of separate intentional disparate treatment claims when, in fact, Plaintiffs allege that a common underwriting policy led to discriminatory outcomes. It misses the point because its contention that the mortgage

applications at issue here are so individualized as to preclude a finding of commonality for *any* potential class is the rough equivalent to stating "No, you're wrong" in response to the Complaint's allegations. That response is inapposite pre-discovery. Further, Navy Federal's argument is incompatible with its recognition that the district court ruled that Plaintiffs have each alleged a disparate impact as to themselves. To find that the individuals were each subject to a disparate impact arising from Navy Federal's underwriting policy, the district court had to determine that, despite the existence of individual loan applications involving some difference in underwriting criteria, the underwriting policy as alleged was sufficiently uniform and harmful as to override whatever individualized assessment occurred.

Finally, Navy Federal argues the case fails for lack of predominance and typicality. With respect to predominance, Navy Federal refers back to its failing arguments regarding commonality. With respect to "typicality," Navy Federal argues that, because the class definition embodies potential loan vehicles like home equity lines of credit (HELOCs) different from those sought or obtained by the nine named plaintiffs, any potential class claim fails. There are three easy responses to those arguments, none of which Navy Federal attempts to rebut. First, Plaintiffs have alleged that Navy Federal applies a common underwriting policy in evaluating creditworthiness of its applicants across *all loan vehicles*, and that this policy is the problem. If there are different products subject to the same discriminatory policy,

typicality is not defeated. Second, and as a result, typicality inquiries are fact-bound, and inappropriate prior to class discovery. Third, to the extent discovery reveals that the credit evaluation of, *e.g.*, HELOC applicants, is somehow fundamentally unique, the class definition could in theory be narrowed—the very remedy Navy Federal actually requested before the district court.

As the district court observed, the allegations here are "obviously very, very serious." JA92. But Plaintiffs are just a few of many with identical claims. Plaintiffs respectfully request the opportunity to seek relief and resolution on behalf of others who, like themselves, have been harmed by Navy Federal's discriminatory underwriting practices.

## II.      Plaintiffs Allege a Common Policy

### A.      The District Court's Finding That Plaintiffs Stated A Disparate Impact As To Themselves Should Preclude Striking The Class Allegations

Even as to a single person, stating a claim for disparate impact inherently requires allegations of a common policy felt on a group level. *See Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 527 (2015) (statistical analysis of disparity across those who experience a common policy represents typical proof in disparate impact cases). Navy Federal does not argue the district court erred in undertaking one uniform analysis to hold that the named Plaintiffs plausibly alleged a disparate impact claim as to themselves. Nor

4

can it. Plaintiffs alleged a common credit evaluation policy that disparately impacted them, supporting their claims through class-wide data. JA44-51, 54-55 ¶¶ 63-83, 94-96.

As to the individual plaintiffs, the district court correctly held Plaintiffs sufficiently pled a claim for disparate impact under the FHA and ECOA because "the statistical disparities reveal a disparate impact among *non-white loan applicant**s*** and **the** underwriting algorithm and process is alleged to have caused the disparity." JA116 (emphasis added). This portion of the district court's ruling reflected Plaintiffs' allegations of a single policy applied across an entire class. JA44-46, 51 ¶¶ 64-68, 83. As Plaintiffs explain in Paragraph 67 of their Complaint, for example, "once Navy Federal has deemed an application [for a home loan] complete, it runs the data from the application and other information…through its proprietary underwriting algorithm to determine a person's creditworthiness according to its model, and then decides whether to lend to a particular borrower and on what terms." JA45.[1]

---

[1] *See also, e.g.*, JA44 ¶ 64 (Navy Federal engages in a "somewhat automated" underwriting process and requires every loan applicant to provide the same information on a Uniform Residential Loan Application form (Form 1003); JA 45 ¶ 65 (alleging "each of [the loan types] relies on similar factors for the determination of an applicant's creditworthiness."); ¶ 66 (Navy Federal hired outside vendor to help automate the application and lending process); JA 51 ¶ 83 (referencing Navy Federal's public statements that it uses a semi-automated underwriting process characterized by a proprietary "formula.").

Where the district court erred, however, was in determining that, despite finding a disparate impact (predicated on a common policy applied across loan types) as to each of the plaintiffs, it could find—at the motion to dismiss stage—that Plaintiffs would never be able to support class-wide allegations.

Research does not reveal a single case where, *pre-discovery*, a disparate impact claim as to an individual was sustained, but as to a class was immediately struck. Navy Federal cites no such case. This is unsurprising: If a purportedly neutral policy causes a racially disparate impact to several plaintiffs, it is at least plausible (indeed, quite likely) that the policy would cause a disparate impact across a putative class. As one Circuit noted (in a case Navy Federal *does* cite, Opp. at 24), "disparate impact claims are well suited for classwide adjudication: the policy either disparately impacted the plaintiff class or it did not." *Simpson v. Dart*, 23 F.4th 706, 712 (7th Cir. 2022).

Nevertheless, Navy Federal cites two cases—*Tabor v. Hilti, Inc.*, 703 F.3d 1206 (10th Cir. 2013) and *Talley v. ARINC, Inc.*, 222 F.R.D. 260, 271 (D. Md. 2004)—for the proposition that "there is nothing remarkable about individual disparate-impact allegations moving forward while class disparate-impact allegations in the same case are rejected." Opp. at 27. But Navy Federal fails to note that, *for each case*, the class allegations were struck *after* extensive discovery relating to the class claims had been conducted. *See Tabor*, 703 F.3d at 1215

(affirming lower court's denial of class certification following post-discovery motion for certification); *Talley*, 222 F.R.D. at 263 (recognizing decision on motion to strike was made only after plaintiffs provided opportunity "for discovery on the class certification issue"). Indeed, in *Talley*, the district court awarded plaintiffs approximately nine months to develop a comprehensive response to the motion to strike, including the opportunity to take depositions and propound written and document discovery. Only then, on a fulsome record, did the district court determine that class allegations could not survive. *See id*. at 266 (plaintiff submitted "affidavits, documentary and statistical evidence" after discovery); *Talley v. ARINC*, Case No. RDB-02-CV-3925 (Dkt. No. 57) (Defendant ARINC's Supplemental Reply In Support Of Its Motion To Strike Plaintiffs' Class Action Allegations) (detailing nature of discovery obtained).

The dispositive procedural difference is not the only way that *Talley* and *Tabor* are inapposite. Whereas Plaintiffs here allege the existence of a universally applied algorithm and common credit evaluation policy that causes a disparate impact, both *Talley* and *Tabor* were Title VII cases with very different facts.

In *Talley*, plaintiffs were found, as a factual matter and following extensive discovery, to have been unable to prove their central allegation that a single decisionmaker was responsible for the allegedly discriminatory hiring decisions. 222

F.R.D. at 267 (recognizing that where centralized decision making is present, classes may be certified).

In *Tabor*, the Tenth Circuit determined, on a robust record following extensive discovery, that the plaintiff's challenge was to a highly discretionary, unconstrained policy that defendant "failed to maintain…in any uniform manner." *Tabor*, 703 F.3d at 1229. The court found that the fundamental lack of uniformity—as opposed to a policy where the discretion given to supervisors responsible for hiring was at least somewhat limited—was dispositive with respect to the class allegations. *Id.*

By contrast, Plaintiffs here have alleged that Navy Federal engages in *the same* credit evaluation policy across the board; *i.e.*, (1) an "underwriting algorithm and process," JA116, applied to the entire class; and from which (2) "statistical disparities" show a disparate impact arising from that policy.[2] At the motion to dismiss stage, if such a disparate impact is alleged as to the named plaintiffs, it is *at least plausible* that the disparate impact is alleged as to the class. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[2] Navy Federal argues that Plaintiffs do not allege a single policy, but instead proffer a series of separate policies, noting intermittent use of plural words in Plaintiffs' allegations and the lower court's decision. Opp. at 29. What Navy Federal fails to mention is that a disparate impact claim is properly based on a "policy or polic*ies* causing [the] disparity." *Inclusive Communities*, 576 U.S. at 542 (emphasis added).

**B.     Navy Federal's Arguments Regarding Commonality Fail**

**1.     Mere Differences In Loan Types Do Not Defeat Commonality**

Navy Federal argues the district court was right to strike the class allegations because Plaintiffs applied for loan types that "are very, very different" from each other. Opp. 12 (citing motion to dismiss hearing transcript). But that Plaintiffs applied for different types of loans does not defeat commonality, because the alleged differences are not material. Plaintiffs' claims are predicated on Navy Federal's means of evaluating credit risk, which the Complaint explains is uniformly applied across those different loans. JA44-46, 51 ¶¶ 64-68, 83. *See, e.g., Williams v. Big Picture Loans, LLC*, 339 F.R.D. 46, 58 (E.D. Va. 2021) (certifying borrowers' claims where they arose from single lending scheme, recognizing "a class action will not be defeated solely because of some factual variances in individual grievances.") (cleaned up), *aff'd sub nom. Williams v. Martorello*, 59 F.4th 68 (4th Cir. 2023).

As discussed above, the Complaint alleges that Navy Federal's credit-risk algorithm systematically deems minority borrowers to be overly "risky," which renders the applicant either denied, or offered a more expensive loan. JA46-55 ¶¶ 70-83, 85-86, 89, 94-96. This risk-assessment is alleged to be consistent and applied across loan types: whatever the loan, the decision to provide it, and on what terms,

depends on Navy Federal's application of its uniform underlying policy and algorithm to evaluate credit risk.[3]

The Complaint does *not* suggest that Navy Federal's secret discriminatory underwriting policies affect applicants for one loan type, but not another.[4] That would be illogical: whatever the loan, risk factors will be evaluated. Indeed, the Complaint explains that across loan types, Navy Federal seeks the same inputs relating to purported credit risk (such as credit score, loan-to-value, debt-to-income, etc.), and reports the HMDA data for all loan types to regulators in the same manner. JA 37, 44-45, ¶¶ 44-45, 64-68. Thus, it was error to strike the class allegations based on factual assumptions of differences in the loan products and outcomes, because based on the face of the Complaint, those differences are immaterial to Plaintiffs' common legal theory.

Indeed, the very cases cited by Navy Federal hold as much. One of the cases Navy Federal relied upon (Opp. at 8) is *Goodman v. Schlesinger*, 584 F.2d 1325 (4th Cir. 1978). In *Goodman*, an employment discrimination case, the three named

---

[3] *See* supra at Sec. II.A.
[4] Navy Federal mentions characteristics and requirements of VA-backed loans. Not only are these factual allegations outside the Complaint (rendering their consideration impermissible), Navy Federal does not explain how these requirements may be materially different than the requirements from its other loan products, nor how any such difference undermines a common discriminatory underwriting policy.

plaintiffs filed suit on behalf of a far-reaching putative class of "all *black persons* and all *females* who *have sought* employment and who *are employed* or *might in the future* be employed by the Norfolk Naval Shipyard . . . who *have been denied*, or . . . *will be denied equal employment opportunities* . . . on the grounds of their race, color and/or sex," regardless of the position applied for or held, or the relevant qualifications. 584 F.2d at 1326 (emphasis added). The complaint (which had only three named plaintiffs) included "thirteen different types of employment discrimination." *Id.* 1326-27.

While the district court dismissed the class allegations on the pleadings, *this Court vacated the dismissal*. Despite the broad class and the potentially varied circumstances of putative class members' employment, the Court reasoned that "assuming [a]rguendo the validity of actual matters contained in the class allegations, we cannot say certification was inappropriate as a matter of law." *Id.* at 1332. This Court also reiterated the "normal practice that requires the district court to consider" facts developed in discovery, finding the broad class definition in the *Goodman* complaint "present[ed] no circumstance to justify a departure from" that "normal practice." *Id.* Of course, the class allegations here—characterized as they are by a uniform underwriting algorithm applied across the putative class—are much less far-reaching, and much more clearly common across the putative class, than those in *Goodman*.

11

Accordingly, even if the district court concluded there appeared to be material differences between the loan products, it was error to strike the class allegations because it is by no means clear that those differences matter, since Navy Federal's credit risk evaluation—which Plaintiffs allege to have been uniform in character— is consistent, forms the basis of Plaintiffs' claims, and is used prior to the awarding of *any* loan product.[5]

Nevertheless, Navy Federal argues that courts "routinely" strike class allegations where "factual variations among the claims abound." Opp. at 31. Tellingly, each and every case Navy Federal cites is clearly inapposite, as each case involved either (1) a post-discovery ruling or (2) hopeless variability in state law that is clearly not present in *this* matter. *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (no class claim because "plaintiffs' claims are governed by different States' laws"); *In re Yasmin & Yaz (Drospirenone) Mktg.*, 275 F.R.D. 270, 275 (S.D. Ill. 2011) (same); *Talley*, 222 F.R.D. at 263 (plaintiffs granted nine months of class-wide discovery prior to ruling on motion to strike class allegations);

---

[5] Navy Federal argues repeatedly that the district court's statement at the hearing that Plaintiffs were attempting to combine "apples, oranges, grapefruits and bananas," Opp. at 7, 11, 34, warrants affirmance. But even applying that analogy, what the Complaint alleges is that there was a common policy on how to deal with *fruit*, even if there do exist different fruits in the world. It is error to strike class allegations that, on their face, are based on allegations that the same semi-automated policy was applied to each loan product, whatever the subtle variations that exist. *See, e.g.,* JA44-46 ¶¶ 64-68.

*EQT Prod. Co. v. Adair*, 764 F.3d 347, 355 (4th Cir. 2014) (vacating the district court's grant of post-discovery class certification); *Rose v. SLM Fin. Corp.*, 254 F.R.D. 269, 274 (W.D.N.C. 2008) (denying plaintiff's post-discovery motion for class certification).

Finally, Navy Federal argues that "[p]recedent confirms that commonality is lacking where putative class members' claims implicate varied financial products or arrangements." Opp. at 16. But no case says that. Indeed, and as discussed at length in Plaintiffs' opening brief, disparate impact classes are routinely certified where there are complex products characterized by a variety of credit-risk inputs. *See* App. Br. 19-21.

As to the cases Navy Federal cites, not one of them stands for the broad proposition that "varied financial products" will defeat commonality. To wit: *Adair* involved the certification of five related class actions alleging a breach of contract for unpaid methane royalties. *See* 764 F.3d at 367. Following discovery, the court found that two of the cases met commonality because they had contracts with uniform obligations to class members, while three cases did not because there were variations in the obligations to class members. *Id.* In *Rose*, the Court found commonality lacking because plaintiffs did not identify (after discovery) a uniform promise in a case alleging bait-and-switch tactics as to the calculation of fees for loan commissions. 254 F.R.D. at 272. Finally, in *Gen. Tel. Co. of Sw. v. Falcon*, the

13

Supreme Court found that it was an error to grant certification both to a discriminatory hiring class and discriminatory promotion class where the lead plaintiff faced discrimination in promotion but not hiring, and his complaint did not "identify[] the questions of law or fact that were common to the claims of [lead plaintiff] and of the members of the [hiring] class he sought to represent." 457 U.S. 147, 158 (1982).

Here the common questions are apparent, including, among others, "[w]hether home loans granted to Class members were granted on terms less desirable than the terms given to similarly situated non-minority applicants," "[w]hether Navy Federal's underwriting algorithms or machine learning programs were racially biased and led to unfairly discriminatory credit policies that harmed minority applicants;" and "[w]hether Navy Federal's internal approval processes are or were discriminatory."[6] In short, on the face of the Complaint, this case asks whether Navy Federal's uniform process for evaluation of credit risk—an evaluation consistent across the home-loan financial products described—disparately impacts minority borrowers/would-be borrowers. No case has held that the existence of "varied

_____

[6] Navy Federal's statement (Opp. at 15) that Plaintiffs' allegations are not "competently crafted" is an irrelevant and baseless *ad hominem* attack. More importantly, the cherry-picked common questions that Navy Federal points to could easily apply to sub-classes, if discovery demonstrates sub-classes are warranted; thus, pointing out that those questions may not apply to every Plaintiff or putative class member does not support striking the class allegations altogether.

financial products" (whatever Navy Federal means by that phrase) will necessarily overcome those common questions. Certainly, no case has so held pre-discovery.

### 2. Purportedly "Individualized" Mortgage Process Does Not Defeat Commonality

By the same token, Navy Federal mischaracterizes Plaintiffs' allegations (and the district court's ruling) when it argues that the "individualized" nature of mortgage loan determinations precludes certification of any class or classes, regardless of what discovery reveals. Opp. 16-18. As discussed above, the Complaint alleges that a *uniform* underwriting policy—applied to all applicants—led to racially disparate outcomes, despite whatever "individualized" work went into those applications. As the district court reasoned in upholding Plaintiffs' individual disparate impact claims, discovery will reveal whether Plaintiffs are correct. JA116. This same reasoning applies to Plaintiffs' class allegations.

The cases cited by Navy Federal present starkly different circumstances. In those cases, plaintiffs sought to certify classes of individuals who alleged they had been victims of separate incidents of *intentional* discrimination. The courts accordingly found the plaintiffs had not pointed to a common policy—just many potential individual discrimination cases. *See Love v. Johanns*, 439 F.3d 723 (D.C. Cir. 2006) (plaintiffs were female farmers whose loan applications were decided by different "local committees" that considered subjective criteria including "farming experience" and "character"); *Rodriguez v. Nat'l City Bank*, 726 F.3d 372 (3d Cir.

2013) (affirming denial of class certification where the plaintiffs alleged disparate impact as a result of "exercise of broad discretion by an untold number of unique decision-makers in the making of thousands upon thousands of individual decisions"); *Adams v. Bethlehem Steel Corp.*, 736 F.2d 992, 994 (4th Cir. 1984) (plaintiffs did not "attempt to establish a nexus between their individual claims and those of the putative class members"); *Carson v. Giant Food, Inc.*, 187 F. Supp. 2d 462 (D. Md. 2002), *aff'd sub nom. Skipper v. Giant Food Inc.*, 68 F. App'x. 393 (4th Cir. 2003) ("Plaintiffs have not identified any neutral practice or policy that lies at the basis of their claims. Rather, it is clear that what Plaintiffs are claiming is . . . disparate treatment."). In contrast, Plaintiffs here allege they were subject to a common facially neutral underwriting policy that caused a racially disparate impact—not that they were each separately subject to discriminatory animus.[7]

## III.   Navy Federal's Arguments Regarding Typicality and Predominance Fail

Navy Federal gestures towards a supposedly irredeemable failure in the Complaint of "predominance" and "typicality." Neither argument is persuasive.

**<u>Predominance</u>**. Respecting predominance, Navy Federal contends only that the "requirement cannot be satisfied here for the same reasons commonality is

---

[7] Thus, the portions of the record Navy Federal cites where the district court discussed Plaintiffs' (now dismissed) disparate *treatment* claims (Opp. at 17) is not relevant here. Navy Federal confuses the issues by attempting to read reasoning applicable to Plaintiffs' claims of intentional discrimination into their disparate impact claims.

lacking." Opp. at 22. That argument fails for the same reasons Navy Federal's arguments respecting commonality fail. Further, and to be clear, courts routinely and correctly recognize that the question of predominance—which relates to whether common questions do *in fact* predominate over individualized inquiries—is a factual inquiry to be engaged in following discovery. *See*, *e.g.*, *In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*, 537 F. Supp. 3d 679, 756 (D.N.J. 2021) (collecting cases); *Fobbs v. Hunt*, 2021 WL 1792087, at *17 (E.D. Va. May 5, 2021) ("[A]t this pre-discovery stage, the Court cannot definitively determine whether the questions of commonality and predominance are satisfied given the dearth of information . . . .").

**<u>Typicality</u>**. Navy Federal argues that, because the named plaintiffs did not apply for "either a loan modification or a home equity line of credit," no class could be certified for want of typicality. Opp. at 22. The argument has no basis for at least three reasons. First, mere differences in details of products will not defeat a finding of typicality so long as the harm—here, Navy Federal's faulty credit underwriting policy—applies across the products. *See*, *e.g.*, *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir. 2012) ("When a class includes purchasers of a variety of different products, a named plaintiff that purchases only one type of product satisfies the typicality requirement if the alleged misrepresentations or omissions apply uniformly across the different product types.") (collecting cases). Second, and

17

relatedly, the typicality inquiry also is inherently fact-bound, and should be evaluated only following discovery. *See*, *e.g.*, *Jones v. Depuy Synthes Prods., Inc.*, 330 F.R.D. 298, 307–08 (N.D. Ala. 2018) ("a determination of typicality is better suited for a ruling on a motion for class certification because at that stage the Court will have more information regarding the characteristics of the members of the proposed class."). Finally, even by its own terms, Navy Federal's "typicality" argument would theoretically be cause for narrowing the class definition to exclude the two loan types not described by named plaintiffs (HELOCs and loan modifications), not for throwing class allegations out in their entirety.

## IV.    Ample Authority Suggests Plaintiffs' Proposed Class Could Be Certified

In its Opposition, Navy Federal states that "[n]o authority suggests plaintiffs' proposed class could be certified." Opp. at 23 (cleaned up). Not so. As Plaintiffs point out in their Opening Brief (App. Br. 15-16), Plaintiffs' well-pled allegations linking a particular underwriting policy with a statistically significant racially disparate outcome is in accord with other cases in which courts have determined that plaintiffs have successfully alleged a disparate impact—cases that Navy Federal declines to address in their Opposition. *See*, *e.g.*, *Montgomery Cnty., Maryland v. Bank of Am. Corp.*, 421 F. Supp. 3d 170, 183–84 (D. Md. 2019) (identification of "set of related statistical disparities" sufficient to demonstrate a disparate impact); *Nat'l Fair Hous. All. v. Bank of Am., N.A.*, 2023 WL 2633636, at *7 (D. Md. Mar.

24, 2023) (denying summary judgment and finding that "[a] disparity is sufficiently significant if it demonstrates a statistically and practically significant discrepancy between valid comparative populations") (cleaned up); *Cnty. of Cook v. HSBC N. Am. Holdings Inc.*, 314 F. Supp. 3d 950, 967 (N.D. Ill. 2018) (defendant bank's underwriting behaviors considered a "policy" sufficient to support a disparate impact claim); *Prince George's Cnty., Maryland v. Wells Fargo & Co.*, 397 F. Supp. 3d 752, 766 (D. Md. 2019) (challenge to "equity stripping" policies sufficient to sustain a disparate impact claim).[8]

Navy Federal goes to particular pains to distinguish *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 281 (W.D. Tex. 2007), a case in which the plaintiff alleged that an insurance company's credit scoring algorithm was disparately impacting minorities. Navy Federal claims that the dispositive issue in *DeHoyos* was the

---

[8] Navy Federal claims that another case Plaintiffs cited, *Buycks-Roberson*, is simply "bad law." This is a strange statement, since Navy Federal approvingly cites *Buycks-Roberson* themselves for the proposition that district courts can use "flexible tools for dealing with individualized issues" and amend class definitions where discovery may show the proposed class is not in fact impermissibly broad. Opp. at 34-35. In any event, that *Buycks-Roberson* was a case involving some amount of loan officer discretion does not render it "bad law" in the context of class certification, even post-*Dukes*. As the Tenth Circuit recognized in *Tabor*, the mere existence of some discretion on the part of lower-level decisionmakers does not vitiate class certification, so long as plaintiffs control for constraints on that discretion. 703 F.3d at 1224. The existence, nature, and extent of loan officer discretion here will only be revealed in discovery.

plaintiffs' allegations that a "credit scoring algorithm" applied to everyone, whereas in the instant case, Plaintiffs did not do so.

But that argument ignores the Complaint. As in *DeHoyos*, Plaintiffs here allege that Navy Federal employs a unique "credit scoring algorithm"—described specifically in the Complaint as a "proprietary underwriting algorithm," JA46 ¶ 67—that was applied across loan types and disparately impacts non-White applicants. JA44-57 (¶¶ 64-68, 70-83, 85-86, 89, 94-96). In such a circumstance, commonality is present. Indeed, language from *DeHoyos* can be ported over nearly word for word here:

> the fundamental factual and legal issues raised in this suit focus not on matters unique to the individual policyholder, but on [Navy Federal's] policy of using a particular credit scoring algorithm, which plaintiffs allege has a disparate impact on minorities. Stated another way, [Navy Federal's] conduct impacts all class members. Because the class is affected by this general policy, which is the focus of this litigation, the commonality requirement has been met.

240 F.R.D. at 281. Just so.

## V.    The District Court's Order Was Otherwise Fundamentally Flawed

### A.    The District Court Engaged In Impermissible Fact-Finding

As Plaintiffs explain in their opening brief, the district court engaged in impermissible fact-finding when it concluded, pre-discovery, that no class could be certified, no matter what discovery ultimately revealed, because "the circumstances of each plaintiff's loan application process are so varied." JA122. Taking a series of

statements out of context, Navy Federal states that there were indeed varied circumstances, because Plaintiffs applied for various loan types, with one applicant receiving a loan (but at a higher interest rate than she should have received). Opp. at 25-26.

What Navy Federal—and indeed, the district court below—ignores is that, *across the loan types*, plaintiffs allege Navy Federal employs a "proprietary underwriting algorithm to determine a person's creditworthiness according to its model," JA45 ¶ 67; *see also id.* ¶ 65—and bases its decisions on the result of that creditworthiness analysis. As the district court itself put it, "the Complaint has sufficiently pled a claim for disparate impact…because it meets the requirements to state a claim: the statistical disparities reveal a disparate impact among non-white loan applicants *and the underwriting algorithm and process is alleged to have caused the disparity*." JA116 (emphasis added).

The district court's decision to strike, which was entirely encapsulated in a half-sentence,[9] was based on an apparent false premise that, *despite the same credit-evaluation alleged across all loan types and the entire putative class*, the "loan process" was so "varied" as to preclude certification of any class. The overriding nature of this purported variety is not in the Complaint, since the Complaint insists

---

[9] "Because the circumstances of each plaintiff's loan application process are so varied, and to promote the efficient use of resources and to streamline the claims to be considered in this civil action . . . ." JA122.

that the same underwriting policy is applied to the entire putative class. *See, e.g.*, JA44-46, 51 (¶¶ 64-68, 83). Instead, "variability" is a conclusion the Court drew. Navy Federal suggests that court may "draw on its judicial experience" to reach its conclusion. Opp. at 27. But the Court is not a banker or a loan officer, and there is no cause for it to make the inferential leap that, despite Navy Federal seeking the same inputs relating to purported credit risk (including, *e.g.*, loan-to-value ratio, credit score, zip code, etc.) from all putative class members across all loan types, and despite using the same "underwriting algorithm and process," Navy Federal nevertheless so fundamentally varies its "application process" that an applicant under one loan type would not be discriminated against, even if an applicant under another would be. All of which is to say: plaintiffs allege a single credit-underwriting policy and process, and allege that process is applied across all loan types and is discriminatory. The district court's apparent assessment that the discriminatory process must vary across loan types is entirely unsupported by the record and represented its own factfinding.

## B.      The District Court's Decision Is Internally Inconsistent

The district court's decision was also internally inconsistent. In upholding the individual disparate impact claims, the district court recognized that the nine separate Plaintiffs with different facts and loan types had alleged facts supporting a common policy or practice of discrimination. JA114-15 (citing JA44-46, 53 ¶¶ 63-

67, 89). In later striking the class allegations, the district court appears to have *assumed* that different loan products necessarily meant different underwriting policies were applied. JA122. But that is not what is alleged in the Complaint, and these two conclusions are internally inconsistent.

In arguing that the district court did not contradict itself with its separate holdings that a common policy had been alleged for purposes of sustaining the individual disparate impact claims, but not to support class allegations, Navy Federal argues that Plaintiffs had not, in fact, alleged a common policy, but separate policies. Opp. at 28-29. Navy Federal's argument is without merit. As the district court recognized, Plaintiffs in fact have alleged that "the underwriting process is substantially the same for the loan types sought by each of the named plaintiffs and members of the putative classes." JA115.[10]

Navy Federal cites three cases (Opp. at 27-28) in purported support of their conclusion that the district court's decision is internally consistent: *Bacon v. Honda of America Manufacturing, Inc.*, 370 F.3d 565 (6th Cir. 2002); *Tabor*, 703 F.3d 1206; and *Talley*, 222 F.R.D. 260 (D. Md. 2004). The cases do them no help. *Bacon v. Honda* merely stands for the basic proposition that the same statistical analysis used to show disparate impact in a class action can also be used to support an individual

---

[10] Further, a company can have "policies and procedures," plural, and still have those collective policies and procedures cause the same disparate impact on a protected class. *Inclusive Communities*, 576 U.S. at 542.

claim. 370 F.3d at 576. This weighs in favor of granting class certification in disparate impact cases, not striking all class allegations at the pleading stage in favor of an individual action. As discussed at length above, the other two cases—*Tabor* and *Talley*—were decided following extensive discovery, and only after a determination for each that the discretion alleged in the cases' respective complaints to have been centrally vested was not, in fact, as cabined as alleged. As also noted above, Plaintiffs here allege that Navy Federal's loan determinations were not haphazard and highly discretionary, but instead were based on a "semi-automated underwriting process." JA51 ¶ 83.

The district court's conclusion that Plaintiffs each stated a claim for disparate impact arising from a specific policy is inconsistent with its conclusion that, on its face, the Complaint fails to support any class claims based on that same specific policy.

### C.    The District Court's Order Was Premature

As discussed throughout this Reply, the district court's decision was premature, and no argument Navy Federal proffers regarding the decision should change that conclusion. In the final section of their Opposition, Navy Federal attempts several counterarguments, each of which fails.

First, Navy Federal cites authorities for the general proposition that sometimes it is appropriate to strike class allegations at the pleading stage. The cases cited by

Navy Federal involved very different circumstances than those present here. *See,
e.g., Ellison v. Inova Health Care Services*, 692 F. Supp. 3d 548 (E.D. Va. 2023)
(employment case involving objections to COVID-19 vaccine based on each
putative class member's individual religious beliefs); *Waters v. Electrolux Home
Products, Inc.*, 2016 WL 3926431 (N.D. W. Va. Jul. 18, 2016) (products liability case
seeking certification of claims for disparate personal injuries); *Knapp v. Zoetis, Inc.*,
2021 WL 1225970 (E.D. Va. Mar. 31, 2021) (plaintiff lacked standing to represent a
class bringing claims under New Jersey law because her claims arose under Virginia
law).[11] Each of these flaws was obvious from the face of the respective complaints.
Here, Plaintiffs have alleged that Navy Federal's discriminatory underwriting policy
applies in the same way to all minority loan applicants, regardless of the loan product
applied for. There is nothing "obvious" on the face of the Complaint suggesting that
Navy Federal could not possibly have such a common means of evaluating credit
risk across loan products.

Navy Federal next argues that the district court's decision to strike class
allegations was not *sua sponte*. However, as explained in Plaintiffs' Opening Brief,

---

[11] Navy Federal's remaining cases are similarly distinguishable. *See Pilgrim*, 660
F.3d at 949 (striking nationwide class allegations where claims were governed by
different states' laws and fact discovery would not cure issue); *In re Yasmin and Yaz*,
275 F.R.D. at 275-276 (S.D. Ill. 2011) (striking nationwide class allegations in
products liability case where plaintiff was given additional time to fully brief class
certification issues).

Navy Federal's only arguments in their motion to dismiss in favor of striking class allegations *in their entirety* was that Plaintiffs had failed to provide proper notice under their Membership Agreements. D.Ct. Dkt. 69 at 21-22. In the alternative, Navy Federal sought to *limit* (but not completely strike) class allegations to the specific loan products applied for by Plaintiffs. *Id.* at 22-23. The district court instead, *sua sponte*, permanently struck *all* of Plaintiffs' class allegations.

Third, Navy Federal takes issue with Plaintiffs' statement that the Court provided "no explanation beyond" a half-sentence in its opinion in striking the class allegations, stating that (1) the district court in fact observed throughout its opinion that there existed multiple "policies" and "processes"; and (2) that in any event the district court discussed its reasoning at a hearing. Neither argument is correct.

While the district court observed in its disparate impact analysis that Navy Federal contended different loan products "*presumably* [had] different underwriting requirements," JA114 (quoting D.Ct. Dkt. 69 at 14) (emphasis added), the district court then *rejected* that very argument in sustaining Plaintiffs' individual disparate impact claims, recognizing "the underwriting process is substantially the same for the loan types sought by each of the named plaintiffs and members of the putative classes." And Navy Federal's continued citation to the hearing transcript, as if that supersedes the district court's written opinion, is inappropriate. *See, e.g., Murdaugh Volkswagen, Inc. v. First Nat. Bank of S.C.*, 741 F.2d 41, 44 (4th Cir. 1984) ("Basic

to the operation of the judicial system is the principle that a court speaks through its judgments and orders," not statements made at hearings); *Segars v. Atl. Coast Line R. Co.*, 286 F.2d 767, 770 (4th Cir. 1961) ("It is the formal order that determines the action of the court rather than some chance statement or observation made by the Judge during the course of oral arguments.").

Finally, Navy Federal argues the district court's decision was not premature because no discovery or factual development could "sav[e]" Plaintiffs' proposed class. Opp. at 34-35. But Navy Federal's bare contention that different loan products "presumably" had different underwriting processes should be tested in discovery. The Complaint adequately alleges a common underwriting policy that applied to all putative class members and loan products. To the extent the Court has concerns that there exist dispositive variations in Navy Federal's underwriting policies depending on the loan product offered or the applicant's individual circumstances, the proper course is to permit the case to proceed and revisit the issue, including whether certification of a more limited class or sub-classes may be appropriate, following discovery and a full opportunity to brief class certification.

## VI.    Conclusion

For the above-stated reasons, the Court should reverse the district court's Order striking Plaintiffs' class allegations.

Dated: December 17, 2024

Respectfully submitted,

*/s/ Hassan A. Zavareei*
Hassan A. Zavareei
Glenn E. Chappell
Shana Khader
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW
Suite 1010
Washington, D.C. 20006
Tel. 202-973-0900
hzavareei@tzlegal.com
gchappell@tzlegal.com
skhader@tzlegal.com

Michael Dunn
**MILBERG COLEMAN
BRYSON
PHILLIPS GROSSMAN, PLLC**
900 West Morgan Street
Raleigh, North Carolina 27603
Tel. 919-600-5000
michael.dunn@milberg.com

Glen L. Abramson
**MILBERG COLEMAN
BRYSON
PHILLIPS GROSSMAN, PLLC**
800 South Gay Street, Suite 1100
Knoxville, Tennessee 37929
Tel.  866-252-0878
gabramson@milberg.com

Daniel R. Schwartz
Adam J. Levitt
**DiCELLO LEVITT LLP**
Ten North Dearborn Street
Sixth Floor
Chicago, Illinois 60602
Tel. 312-214-7900
dschwartz@dicellolevitt.com
alevitt@dicellolevitt.com

Ben Crump
**BEN CRUMP LAW PLLC**
122 South Calhoun Street
Tallahassee, Florida 32301
Tel. 850-224-2020
ben@bencrump.com

*Counsel for Plaintiffs-Appellants*

29

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2024, I electronically filed the foregoing petition with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: December 17, 2024             */s/ Hassan A. Zavareei*
                                          Hassan A. Zavareei

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.    This petition complies with the type-volume limitation of Fed. R. App. P. Rule 32(a)(7)(B)(i) because this petition contains 6,494 words, excluding the parts of the petition exempted by Fed. R. App. P. 32(f).

2.    This reply complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in 14-point Times New Roman font.

Dated: December 17, 2024            */s/ Hassan A. Zavareei*
                                    Hassan A. Zavareei
                                    *Counsel for Plaintiff-Appellees*